STATE OF NEBRASKA, APPELLEE, V.
MICHELE S. READY, APPELLANT.

556 N.W.2d 264

Filed November 19, 1996.    No. A-95-1370.

Dorothy A. Walker, of Mowbray & Walker, P.C., for appellant.

Don Stenberg, Attorney General, and Ronald D. Moravec for appellee.

SIEVERS and INBODY, Judges, and NORTON, District Judge, Retired.

NORTON, District Judge, Retired.

## BACKGROUND

On October 24, 1995, the appellant, Michele S. Ready, was charged in an information filed by the county attorney of Cass

County, Nebraska, with unlawful possession of a controlled substance, in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1994), a Class IV felony. Ready filed a motion to suppress evidence, which was later amended with the court's permission to include a request to suppress statements Ready made to Nebraska State Patrol Sgt. Lloyd Peters. A hearing on the amended motion to suppress evidence and statements was held on October 24, 1995. Following oral argument, the district court for Cass County suppressed the statements, but overruled the portion of the amended motion seeking to suppress physical evidence. On November 14, the State dropped the felony charge against Ready and filed a complaint charging Ready with criminal attempt of unlawful possession of a controlled substance, in violation of Neb. Rev. Stat. § 28-201(1)(b) and (4)(d) (Reissue 1995), a misdemeanor.

On November 14, 1995, trial without jury was held. Ready reasserted her objection to the admission of the physical evidence seized from her purse following a traffic stop, as explained more fully below. After trial, the district court determined that Ready was guilty of the misdemeanor charge in the complaint and ordered a presentence investigation. On December 18, the district court sentenced Ready to an 18-month term of probation. On the same date, Ready filed her notice of appeal and the district court released Ready on her previously posted bond and suspended the sentence of probation pending this appeal.

## SUMMARY OF FACTS

The record contains the following facts: On August 19, 1995, at 9:10 p.m., Peters, dressed in a Nebraska State Patrol summer uniform, was driving his marked patrol car when he stopped Ready for an alleged unsignaled left-hand turn. The stop occurred on a dirt road at the intersection of Rock Creek Road and U.S. Highway 6 in Cass County. After stopping Ready, Peters requested her driver's license, vehicle registration, and proof of insurance, which she produced. During this initial contact, Peters noticed a cooler in Ready's car, as well as a slight odor of alcohol. Peters then asked Ready to accompany him to his patrol car to perform two field sobriety tests: the horizontal

nystagmus test and recitation of the alphabet. Ready passed both tests.

Peters then issued Ready a warning for failure to signal a turn and returned the documents he had requested. Thereafter, Peters proceeded to ask Ready three questions: "[D]o you have any drugs in your car?" "[D]o you have any weapons in your car?" "[D]o you have anything at all that's illegal in your car?" After Ready responded no to each question, Peters asked Ready if he could search her car. Peters does not recall Ready's exact response, whether she said "yes or okay or all right," but did seem to recall that Ready did not have any objection to him searching the car. At that point, Peters asked Ready to get her keys, which were still in her car's ignition. Peters noted that Ready did not retrieve her keys immediately, but, rather, "fiddled" around in her purse for nearly a minute before she took the keys out of the ignition. When returning with her keys, Ready also returned with her purse, which she had left in her car up until this time. After doing so, Ready handed her keys to Peters, who then searched the trunk, but found nothing. He then asked to search Ready's purse. Ready did not verbally respond, but, instead, handed her purse to Peters. Upon searching the purse, Peters found what was later tested to be methamphetamine. After the search, Ready was handcuffed and placed under arrest. Peters then searched the rest of the car, but found no other controlled substances.

Ready contends that the search of her car and purse was unconstitutional. Thus, any physical evidence found during the search should have been considered fruit of an unlawful search and should have been suppressed pursuant to *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The State contends that the trial court properly overruled the portion of the amended motion seeking to suppress physical evidence, because Ready's consent to search was voluntary and any evidence obtained thereby was admissible. We agree with Ready and find that the trial court's decision denying that portion of Ready's motion seeking to suppress physical evidence was in error.

## ASSIGNMENTS OF ERROR
Ready asserts that the district court erred in overruling that portion of her motion seeking to suppress physical evidence by (1) failing to find that the search of Ready's car and purse was unconstitutional, (2) failing to find that Ready's consent to search her purse and car was involuntary, (3) failing to find that the search of Ready's purse violated the *Wong Sun* doctrine.

## STANDARD OF REVIEW
In deciding whether to uphold a trial court's ruling on a motion to suppress evidence, an appellate court will uphold the lower court's findings of fact unless those findings are clearly erroneous. *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996). Concerning questions of law, an appellate court has an obligation to reach an independent conclusion. *State v. Cox*, 247 Neb. 729, 529 N.W.2d 795 (1995).

In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996).

In analyzing a motion to suppress, an appellate court may review the evidence from the suppression hearing as well as the evidence brought forth at trial. *State v. Huffman*, 181 Neb. 356, 148 N.W.2d 321 (1967), *cert. denied* 386 U.S. 1024, 87 S. Ct. 1384, 18 L. Ed. 2d 466.

## ANALYSIS
Ready does not argue that Peters improperly stopped her. " 'When an officer observes a traffic offense—however minor— he has probable cause to stop the driver of the vehicle.' " *State v. Chronister*, 3 Neb. App. 281, 285, 526 N.W.2d 98, 103 (1995), quoting *U.S. v. Cummins*, 920 F.2d 498 (8th Cir. 1990), *cert. denied* 502 U.S. 962, 112 S. Ct. 428, 116 L. Ed. 2d 448 (1991). Nebraska law requires that a motorist moving left or right on a roadway signal appropriately. See Neb. Rev. Stat. §§ 60-6,161 to 60-6,163 (Reissue 1993). Clearly, the initial stop was proper.

*Detention.*

■ Ready generally challenges Peters' actions after the initial stop. In effect, Ready claims that when Peters detained her and questioned her further after issuing her a warning ticket, the detention was unconstitutional. A police officer may properly ask a driver of a motor vehicle for his or her driver's license and vehicle registration. The officer may properly run a check on those documents and may also request that the driver sit in the patrol car during this time. Additionally, the officer may ask the driver about his or her destination and purpose and may verify the driver's responses by questioning the driver's passengers. *U.S. v. Johnson*, 58 F.3d 356 (8th Cir. 1995), citing *U.S. v. Bloomfield*, 40 F.3d 910 (8th Cir. 1994) (en banc), *cert. denied* 514 U.S. 1113, 115 S. Ct. 1970, 131 L. Ed. 2d 859 (1995). Moreover, " 'if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.' " 58 F.3d at 357, quoting *U.S. v. Barahona*, 990 F.2d 412 (8th Cir. 1993).

In *U.S. v. Pereira-Munoz*, 59 F.3d 788 (8th Cir. 1995), the trial court held and the appellate court affirmed that an officer's detention of a driver was constitutional, where, after stopping the driver, the officer noticed that the driver was very nervous and that even his hands were trembling. The officer notified the driver, Pereira-Munoz, that he had been speeding, and Pereira-Munoz became very agitated. Additionally, Pereira-Munoz could not produce proof of insurance, but did present to the officer a warning ticket for speeding that he had recently received from Texas authorities at the Texas-Arkansas border. The warning ticket had the word "searched" written on it. The circumstances were enough to make the officer in *Pereira-Munoz* reasonably suspicious and warranted the officer's request to search Pereira-Munoz' car, in which 6 kilos of cocaine were eventually discovered.

Similarly, in *Johnson, supra*, an officer stopped Johnson for tailgating while exceeding the speed limit. After the stop, the officer asked Johnson to sit in the patrol car while he checked Johnson's driver's license and vehicle registration. While running a check on the documents, he asked Johnson where he was

going. Johnson replied that he, his wife, and their child were returning to Indiana after a short trip to Las Vegas. The computer check showed that Johnson could only drive with another licensed driver. With Johnson still in the patrol car, the officer then went to verify that Johnson's wife was a licensed driver. After inspecting her license, the officer asked her about their trip. Her response did not match that of her husband's. At this point, the officer then asked both Johnson and his wife if they had anything illegal in their car and then received both parties' permission to search. The trial court held and the appellate court affirmed that the inconsistent answers by the Johnsons justified their further detention, the additional questioning, and the resultant search.

In a similar case, *U.S. v. Cummins*, 920 F.2d 498 (8th Cir. 1990), *cert. denied* 502 U.S. 962, 112 S. Ct. 428, 116 L. Ed. 2d 448 (1991), both the trial court and the appellate court found that an officer properly detained an automobile driver and his passenger following an initial stop for failure to signal a turn because the officer had reasonable and articulable suspicion that the parties may have committed a crime. In *Cummins*, the officer asked the driver the name of his passenger. The driver replied that the passenger's name was Tim. Later, when the officer asked the passenger to state his name, the passenger replied that his name was Michael Mayfield. This, coupled with the fact that the two men had appeared very nervous before the officer stopped them, amounted to reasonable suspicion.

In the instant case, Peters properly stopped Ready and asked her to produce her driver's license and vehicle registration. Because he had noticed a cooler in her car and a slight odor of alcohol, Peters asked Ready to perform two field sobriety tests: the horizontal nystagmus test and recitation of the alphabet. Ready passed both tests. Peters then gave Ready a warning for not signaling a left turn and returned her driver's license and vehicle registration. "[T]he proper scope of a stop for a traffic violation ends when the reasons for the initial stop have been completely processed and no further matters suggesting a broadening of the inquiry have been presented or such further matters have also been processed." *U.S. v. Morris*, 910 F. Supp. 1428, 1443 (N.D. Iowa 1995). At this point, Peters stated

that the purpose of the stop was over. He did not testify or suggest that he had any reason to continue detaining Ready. In *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the Court stated that an officer may not detain a person for investigative purposes unless the officer has specific and articulable facts that make the officer reasonably suspicious that the person has committed or is committing a crime.

Thus, under the facts of this case, Peters improperly detained Ready under *Terry* after the warning had been issued.

The testimony shows that, and Peters stated that, he did not have probable cause to search. He testified that he did not believe that Ready's car contained any drugs, weapons, or illegal material, nor did Ready do or say anything to invoke reasonable suspicion, justifying Peters' further questioning. Ready did not give Peters any inconsistent statements, nor did he note that she appeared unusually nervous either before or during the period in which Peters issued a warning. Peters did testify that later, after he requested to search her car, Ready "fiddled" around in her purse while retrieving her keys. He also mentioned that after Ready consented to the search, Ready took her purse from her car and clutched it to her side. Peters stated that these actions evoked his suspicions. Because this behavior occurred after Ready consented to the search, it came too late to justify Peters' questions regarding the possession of drugs, weapons, or illegal items. Thus, because there is no evidence to support the detention of Ready for questioning, we find that Peters illegally detained Ready.

*Consent.*

■ "[T]he fact of an illegal detention is only the start, and not the end, of the Fourth Amendment analysis." *U.S. v. Thomas*, 83 F.3d 259, 260 (8th Cir. 1996), citing *U.S. v. Ramos*, 42 F.3d 1160 (8th Cir. 1994), *cert. denied* 514 U.S. 1134, 115 S. Ct. 2015, 131 L. Ed. 2d 1013 (1995). "Even given the illegal detention, a court must still decide if the consent was nevertheless 'sufficiently an act of free will to purge the primary taint.'" 83 F.3d at 260, quoting *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

In *U.S. v. White*, 81 F.3d 775 (8th Cir. 1996), the Court of Appeals for the Eighth Circuit held that the only consideration

in a consent case was whether the defendant consented, and if so, there could be no Fourth Amendment violation. A subsequent case, however, *Thomas, supra,* indicates that whether a defendant's consent was sufficient to purge the taint of an illegal detention is a more complicated analysis.

In *Thomas, supra,* the appellate court followed the analysis of *Ramos, supra,* and in both cases, the court found the defendant's consent sufficient. In this regard, we note that in both of these cases, the officer told the defendant he had the right to refuse to consent and the defendant signed a written consent form, and in both cases, the court noted that the violation of *Terry* was not flagrant. In fact, in both cases, the defendant had engaged in at least some suspicious behavior, warranting further intrusion by the officer.

The facts in the instant case are clearly distinguishable from *Thomas* and *Ramos.* In the instant case, Peters did not advise Ready that she could refuse his request to search, nor did Peters have Ready sign a consent form. While it is true that Peters was not required to do either, these factors are relevant to the assessment of voluntariness of the consent. See *Thomas, supra,* citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). In both *Thomas* and *Ramos,* the court held that because the defendant signed a consent form and was told he had a right to refuse consent, it was clear that the officer was not attempting to exploit the situation. We cannot reach that conclusion here. Under the relevant case law, we must look at the entire circumstances of this case to decide whether Ready voluntary consented. See *State v. Prahin,* 235 Neb. 409, 455 N.W.2d 554 (1990).

In this case, it was nighttime, and Ready was alone when she was stopped. The stop occurred just off a dirt road, and Peters testified that there was no other traffic on this road when he stopped Ready. See *U.S. v. Barahona,* 990 F.2d 412 (8th Cir. 1993) (assessing importance of whether stop was in public or secluded place). Additionally, Peters could not remember the nature of Ready's response when he asked to search her car. He generally testified that he believed that Ready did not have any objection to him searching her car, but the officer could not remember whether Ready said "yes or okay or all right."

Most importantly, unlike in *Thomas* or *Ramos*, the *Terry* violation in this case was flagrant. There is no evidence we can point to that could have given Peters the right to continue questioning Ready after issuing her a warning for improper signaling. Neither Ready's words nor deeds gave Peters cause to be reasonably suspicious. Peters testified that he asked Ready whether she had any drugs, weapons, or illegal items, not because he had reasonable suspicion, but, rather, because he routinely asks such questions after stopping people for traffic violations. This court does not approve of such a practice. Absent probable cause or reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), we hold that the detention of a citizen for questioning, no matter how briefly, after the purpose of a traffic stop has been accomplished is an unreasonable seizure and a violation of the 14th Amendment. Thus, we find that Ready's consent was insufficient to purge the taint of what we consider to be an illegal detention. Accordingly, the contraband found in Ready's purse was the product of an illegal search and seizure; therefore, the district court's order denying suppression of the physical evidence is reversed.

REVERSED.