STATE OF NEBRASKA, APPELLEE,
V. BILLIE JO MCCLEERY, APPELLANT.
560 N.W.2d 789

Filed March 7, 1997. No. S-95-1206.

Jon Placke, Assistant Box Butte County Public Defender, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and BOSLAUGH and GRANT, JJ., Retired.

WRIGHT, J.

Billie Jo McCleery has petitioned this court for further review of a Nebraska Court of Appeals decision that affirmed the county court's overruling of McCleery's motion to suppress evidence obtained as the result of the stop of her vehicle after she attempted to avoid a sobriety checkpoint.

## SCOPE OF REVIEW

In light of the U.S. Supreme Court's decision in *Ornelas v. U.S.*, ___ U.S. ___, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), the traditional clearly erroneous standard of review of a trial court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search is no longer applicable. The clearly erroneous standard has now been supplanted by a two-stage standard in which the ultimate determinations of reasonable suspicion and probable cause are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Konfrst, ante* p. 214, 556 N.W.2d 250 (1996).

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

## FACTS

Between 10 p.m. and midnight on December 2, 1994, the Alliance Police Department conducted a sobriety checkpoint at Third and Niobrara Streets in Alliance, Nebraska. Police officers stopped all vehicles traveling eastbound on Third Street or northbound on Niobrara Street.

Sgt. Rae Ann Christensen, participating in the checkpoint, first observed McCleery's vehicle as it turned north onto Niobrara Street. Christensen testified that when McCleery was approximately one-fourth of a block from the checkpoint, she "threw" her vehicle into reverse and started backing away, toward a grocery store parking lot. Several officers yelled at McCleery to stop, but McCleery continued into the grocery store parking lot until Lt. Timothy Kees, who was processing another vehicle in the lot, was able to stop her. The grocery store was closed.

Once Kees was able to stop McCleery's vehicle, Christensen contacted McCleery and asked for her operator's license and

vehicle information. McCleery had trouble producing her operator's license and produced an expired South Dakota registration before she produced a current certificate. During the course of the stop, Christensen noticed a slight odor of alcohol on McCleery's breath. Field sobriety tests were administered, which results, according to Christensen, indicated impairment. A preliminary breath test was conducted, which showed a .195 reading. At this point, McCleery was placed under arrest. A subsequent Intoxilyzer test was conducted. The result showed that McCleery had a blood alcohol content of .180.

McCleery was charged with driving while under the influence, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1993). Prior to trial, McCleery moved to suppress the evidence adduced at the stop of her vehicle, arguing that the police officers did not have a "reasonably articulable suspicion" McCleery had committed any crime and that therefore the stop of her vehicle was in violation of her constitutional rights. Christensen testified that McCleery was stopped because she was avoiding the checkpoint. The county court overruled the motion to suppress, and McCleery was found guilty of driving while under the influence. McCleery appealed to the district court, which also upheld the county court's decision. She then appealed to the Court of Appeals, which also upheld the county court's decision. We granted McCleery's petition for further review.

## ASSIGNMENTS OF ERROR

In summary, McCleery asserts that the county court and the Court of Appeals erred in holding that the stop of her vehicle was lawful and that the evidence obtained as a result thereof was admissible.

## ANALYSIS

The issue considered by the Court of Appeals was whether stopping one's vehicle one-fourth of a block from a sobriety checkpoint and then backing away from the checkpoint constitutes sufficient evidence for a trained officer to have a reasonable suspicion that the driver is, has been, or is about to be engaged in criminal behavior. We have held on previous occasions that in situations where a person on foot encounters the police, flight alone is insufficient to justify a Terry stop. See State v. Ellington, 242 Neb. 554, 495 N.W.2d 915 (1993).

In a memorandum opinion, the Court of Appeals affirmed the county court's overruling of McCleery's motion to suppress the evidence obtained as a result of the stop of her vehicle. See *State v. McCleery*, 4 Neb. App. xxii (case No. A-95-1206, Aug. 2, 1996). A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Konfrst, ante* p. 214, 556 N.W.2d 250 (1996).

McCleery contends that the police officers had no reasonable suspicion of criminal activity when their only observation was that she avoided the sobriety checkpoint. As noted by the Court of Appeals, a law enforcement officer may legally conduct a *Terry* stop of a person suspected of criminal activity if the officer has a reasonable suspicion based upon articulable facts that the person has been, is, or is about to be involved in criminal activity. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*Terry v. Ohio* held that the public's interest in law enforcement makes it reasonable to detain and question individuals under certain circumstances in which probable cause to arrest is lacking. Such investigatory stops are permissible only upon a reasonable suspicion supported by specific and articulable facts that the person has been, is, or is about to be engaged in criminal activity. In determining whether the officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of the officer's experience. *Id.* That same standard is applied in Nebraska in determining the propriety of an investigatory stop under Neb. Const. art. I, § 7. See, *State v. Ellington, supra*; *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992), *cert. denied* 507 U.S. 1000, 113 S. Ct. 1625, 123 L. Ed. 2d 183 (1993).

In *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289 (1990), we held that there was a sufficiently reasonable suspicion for a stop based on an observation that the vehicle approaching a checkpoint pulled over onto the shoulder and the driver and the passenger then proceeded to switch places. We have, however, not addressed the validity of a stop where the driver stopped her vehicle one-fourth of a block from a sobriety checkpoint and then backed away from the checkpoint.

Whether a police officer has a reasonable suspicion based upon sufficient, articulable facts requires taking into account the totality of the circumstances. See *State v. Pillard*, 235 Neb. 642, 456 N.W.2d 755 (1990). In *State v. Ellington, supra*, from our examination of the record of the activity which the police officer observed, we found that the officer had failed to articulate specific facts to justify a *Terry* stop. There, the officer observed a person standing on the sidewalk in an area known for drug trafficking. The person was leaning toward a legally parked car with his arms extended into the passenger window, apparently conversing with the occupants. The person looked toward the police cruiser, quickly stepped away, and proceeded to walk away from the vehicle. We found that the record did not create a reasonable suspicion based on articulable facts that Ellington had been, was, or was about to be involved in criminal activity.

McCleery contends that the facts surrounding the stop of her vehicle are analogous to *State v. Ellington* insofar as the only possible evidence of illegal activity was that she attempted to avoid a police confrontation. See, also, *State v. Hicks, supra*. However, other courts have distinguished avoidance of a constitutionally permissible automobile checkpoint from the avoidance of the type of unexpected pedestrian encounter presented in *State v. Ellington*. For instance, as noted by the Court of Appeals, the court in *Snyder v. State*, 538 N.E.2d 961 (Ind. App. 1989), considered a situation similar to the stop of McCleery.

In *Snyder v. State*, police officers were conducting a "sobriety roadblock." When Snyder was approximately 100 yards away from the roadblock, he turned his vehicle around in the road to avoid the roadblock. Although Snyder had not commit-

ted any traffic violations, he was stopped by a state trooper. The trooper testified that the only reason he stopped Snyder was because he appeared to be trying to avoid the roadblock.

The court held that Snyder's attempt to avoid the roadblock by turning around raised a "specific and articulable fact" which gave rise to a reasonable suspicion on the part of the law enforcement officer that Snyder might be committing a crime. The court held that such suspicion entitled the officer to conduct a *Terry* stop and detain Snyder. The court reasoned: "If police officers stationed at roadblocks were not permitted to stop such drivers, the very drivers the police seek to deter could flagrantly avoid the roadblocks and the stops would lose their deterrent value." *Snyder v. State*, 538 N.E.2d at 965.

In considering the totality of the circumstances to determine whether a police officer has a reasonable suspicion based upon sufficient, articulable facts, the ultimate determinations of reasonable suspicion are reviewed de novo. See *State v. Konfrst, ante* p. 214, 556 N.W.2d 250 (1996). Findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *Id.*

One fact surrounding the stop of McCleery was not addressed by the county court. The stipulation of facts at trial provided that Kees "would further testify that the check point was conducted in total compliance with the [Department of Transportation] and the Alliance Police Department policies." A U.S. Department of Transportation report on "The Use of Sobriety Checkpoints for Impaired Driving Enforcement" was entered into evidence. Therein, the "Sobriety Checkpoints Briefing Guide" provides in part:

> A motorist who wishes to avoid the checkpoint by legally turning before [entering] the checkpoint area should be allowed to do so unless a traffic violation(s) is observed or probable cause exists to take other action. The act of avoiding a sobriety checkpoint does not constitute grounds for a stop.

McCleery was not cited for committing any traffic violation, and neither officer testified that McCleery had committed any traffic violation.

We therefore consider whether under the totality of the circumstances in this case, the police officers had a reasonable suspicion that McCleery was committing a crime. The only reason given for stopping McCleery was that she appeared to be avoiding the checkpoint. McCleery was not cited for any driving violation. Under certain circumstances, the avoidance of a checkpoint might create a reasonable suspicion that would justify a *Terry* stop. However, since the State has admitted that the officer who initially stopped McCleery would testify that the checkpoint was conducted in total compliance with the Department of Transportation policy which states that avoidance of a checkpoint is not grounds for a stop, we cannot conclude that the officers had a reasonable suspicion in this case.

The decision of the Court of Appeals, which affirmed the conviction by the county court, is reversed. The Court of Appeals is directed to remand the cause to the county court with instructions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.