STATE OF NEBRASKA, APPELLEE, V.
MICHELE S. READY, APPELLANT.
565 N.W.2d 728
Filed July 11, 1997.    No. S-95-1370.

Dorothy A. Walker, of Mowbray & Walker, P.C., for appellant.

Don Stenberg, Attorney General, and Ronald D. Moravec for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WRIGHT, J.

The State of Nebraska has petitioned for further review of a Nebraska Court of Appeals opinion that reversed a conviction for criminal attempt of unlawful possession of a controlled substance.

## SCOPE OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory

stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. McCleery*, 251 Neb. 940, 560 N.W.2d 789 (1997); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

## FACTS

On August 19, 1995, Nebraska State Patrol Sgt. Lloyd Peters was driving southbound on U.S. Highway 63 at the intersection of Rock Creek Road. He observed a westbound Chevrolet Impala stopped at the intersection with its left turn signal on, indicating that it was going to proceed in the same direction Peters was traveling. However, the Impala did not turn left and follow Peters, but, instead, drove through the intersection and continued westward. Peters, who had 15 years of patrol experience, believed that this activity was suspicious. He turned his patrol car around and followed the Impala. He found it stopped at the intersection of Rock Creek Road and U.S. Highway 6, where he saw it make a left turn without signaling. Peters stopped the Impala, which was being driven by Michele S. Ready, and obtained Ready's driver's license, registration, and proof of insurance.

During the initial contact, Peters noticed a cooler in the car and a slight odor of alcohol. Peters then had Ready accompany him to his patrol car for the purpose of administering field sobriety tests. Ready passed the horizontal nystagmus test and the recitation of the alphabet test. Peters thereafter issued her a warning for failure to signal a turn and returned her documents to her.

Before Ready left the patrol car, however, Peters asked her if she had any weapons or drugs or anything illegal in the car. Ready responded in the negative to each question. Peters then asked Ready if he could search her car. Peters did not recall the exact words with which Ready responded, but he recalled that she did not have any objection to the search.

Prior to beginning the search, Peters told Ready that he wanted to search the trunk first. Ready then proceeded to the

front of the car to obtain the keys from the ignition. Peters was able to see Ready's purse sitting on the front seat, and he watched Ready "fiddling around" in her purse for nearly a minute. He observed her take the keys out of the ignition, pick up the purse, put the purse strap over her shoulder, and clutch the purse tightly. Peters testified that Ready's handling of her purse aroused concerns and suspicions in his mind.

Peters then proceeded to the rear of the car, where he searched the trunk. Following that search, he asked Ready for consent to search the purse she was holding. Ready took the purse off her shoulder and handed it to Peters. Upon searching the purse, Peters found what was later determined to be methamphetamine.

Ready was originally charged with unlawful possession of a controlled substance, in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1994). She filed a motion to suppress physical evidence, which was later amended to include a request to suppress statements she made to Peters following the arrest. Following oral argument on the motion to suppress, the district court suppressed the statements but overruled the portion of the motion seeking to suppress the evidence seized from Ready's purse. The State then dropped the unlawful possession charge and filed an amended information charging Ready with criminal attempt of unlawful possession of a controlled substance, in violation of Neb. Rev. Stat. § 28-201(1)(b) and (4)(d) (Reissue 1995).

Trial was held without a jury, and Ready reasserted her objection to the admission of physical evidence seized from her purse following a traffic stop. The district court convicted Ready and sentenced her to 18 months' probation.

On appeal, the Court of Appeals reversed Ready's conviction, finding that her consent to the search was given during an illegal detention and, therefore, was not voluntary. The court held that her consent was insufficient to purge the taint of the illegal detention and that, therefore, the contraband subsequently found in Ready's purse was the product of an illegal search and seizure. See *State v. Ready*, 5 Neb. App. 143, 556 N.W.2d 264 (1996). The State petitioned for further review, and we granted the petition.

## ASSIGNMENT OF ERROR

In its petition for further review, the State alleges that the Court of Appeals erred in finding that the detention of a citizen for questioning, no matter how briefly, after the purpose of a traffic stop has been accomplished is an unreasonable seizure and a violation of the 4th and 14th Amendments to the U.S. Constitution.

## ANALYSIS

The fundamental issue in the present case is whether Ready's consent to the search of her vehicle and purse was voluntarily given. The right to be free from an unreasonable search and seizure, as guaranteed by the 4th and 14th Amendments to the U.S. Constitution and by article I, § 7, of the Nebraska Constitution, may be waived by the consent of the citizen. *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). See *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). In order for a consent to search to be effective, however, it must be a free and unconstrained choice and not the product of a will overborne. *State v. Prahin, supra*. The consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological. *Id.*

It is undisputed that the initial stop of Ready was proper. The Court of Appeals determined that when Peters finished processing the violation for which he initially stopped Ready, the legitimate stop of Ready was complete. At that point, the Court of Appeals reasoned, unless there was a reasonable suspicion that Ready was engaged in other criminal activity, further questioning of Ready amounted to an illegal detention. As a result, because Peters questioned Ready regarding the existence of contraband in her vehicle prior to her leaving the patrol car, without any independent basis for the questioning, the time during which Peters asked Ready about contraband amounted to an illegal detention.

The Court of Appeals held that Ready's consent to Peters' request to conduct a search was so tainted by this illegal detention that the consent was not voluntary. The Court of Appeals

stressed the significance of the illegal detention with respect to the analysis of the voluntariness of Ready's consent.

> Most importantly . . . the *Terry* violation in this case was flagrant. There is no evidence we can point to that could have given Peters the right to continue questioning Ready after issuing her a warning for improper signaling. Neither Ready's words nor deeds gave Peters cause to be reasonably suspicious. Peters testified that he asked Ready whether she had any drugs, weapons, or illegal items, not because he had reasonable suspicion, but, rather, because he routinely asks such questions after stopping people for traffic violations. This court does not approve of such a practice. Absent probable cause or reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), we hold that the detention of a citizen for questioning, no matter how briefly, after the purpose of a traffic stop has been accomplished is an unreasonable seizure and a violation of the 14th Amendment. Thus, we find that Ready's consent was insufficient to purge the taint of what we consider to be an illegal detention. Accordingly, the contraband found in Ready's purse was the product of an illegal search and seizure . . . .

*State v. Ready*, 5 Neb. App. 143, 152, 556 N.W.2d 264, 270 (1996).

This holding is contrary to our analysis in *Prahin*, in which a state patrol officer stopped a driver for speeding and asked the driver to accompany him to the patrol car while the officer checked on the ownership of the vehicle. The driver went back to the patrol car and entered the passenger side of the car. The officer eventually issued the driver a ticket for speeding and a violation card for failure to have a driver's license and returned the driver's identification card and registration.

However, before the driver exited the patrol car, the officer asked, " ' "Excuse me, by the way, would it be all right [for me] to take a look inside of your vehicle for narcotics, drugs, weapons [or] large amounts of cash[?]" ' " *Prahin*, 235 Neb. at 411, 455 N.W.2d at 557. The driver answered "yes," and then the officer asked the driver to sign a written consent-to-search form. After the driver signed the form, the officer searched the vehicle and found packages of cocaine. The driver was arrested,

and after the trial court overruled his motion to suppress, the driver was found guilty of possession of a controlled substance with the intent to deliver.

On appeal, the driver argued that his consent to the search of his vehicle was not voluntarily given. We disagreed. Although we granted that the driver may still have been in custody when the officer asked him for permission to search the vehicle, the fact that he was in custody did not render his consent involuntary. Instead, we held that in order to determine whether a person's consent to search was voluntarily given, a court must review the totality of the circumstances. We concluded from the totality of the circumstances that the driver's consent was voluntary.

The circumstances immediately prior to Peters' request for permission to search Ready's vehicle are essentially identical to the circumstances in *Prahin*. In both cases, the officer had issued the ticket or warning and had returned the driver's license and other documents. In both cases, the officer then asked the driver about contraband and for permission to search. However, in *Prahin*, we did not characterize the officer's questioning of the driver following completion of the stop as an "illegal detention" in violation of the Fourth Amendment, nor did we find that the driver's consent was so tainted by the continued detention that his consent to the search could not be voluntary. We held that in order to determine whether the consent was voluntary, it was necessary to consider the totality of the circumstances surrounding the consent. This analysis is also necessary in the present case.

Recently, the U.S. Supreme Court in *Ohio v. Robinette*, ___ U.S. ___, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996), held that the Fourth Amendment does not require that a lawfully seized defendant be advised that he is legally "free to go" before his consent to search will be recognized as voluntary. In that case, an Ohio deputy sheriff stopped the defendant for speeding, obtained the defendant's driver's license, and ran a computer check which indicated that the defendant had no previous violations. The deputy then issued a verbal warning and returned the defendant's license.

Before the defendant left, the deputy asked, " 'One question before you get gone: [A]re you carrying any illegal contraband

in your car? Any weapons of any kind, drugs, anything like that?' " *Robinette*, 117 S. Ct. at 419. The defendant answered "no" to each of these questions, after which the deputy asked the defendant if he could search the car. The defendant consented. During the subsequent search, the deputy found marijuana and methamphetamine. The defendant was arrested and charged with possession of a controlled substance.

The trial court overruled the defendant's motion to suppress the evidence of the drugs. The defendant pled no contest and was found guilty. On appeal, the Ohio Court of Appeals reversed the trial court's judgment, holding that the search of the defendant's vehicle was the result of an unlawful detention. The Ohio Supreme Court affirmed the judgment of the Ohio Court of Appeals, explaining that when the motivation of the police officer's continued detention is not related to the original stop and the detention is not based on any articulable facts giving rise to a suspicion of some separate illegal activity, the continued detention constitutes an illegal seizure. The Ohio Supreme Court established a "bright line prerequisite" for consensual interrogation such that citizens stopped for traffic offenses must be clearly informed by the detaining officer when they are legally "free to go" after a valid detention before the officer attempts to engage in any consensual interrogation.

The U.S. Supreme Court rejected this bright line prerequisite, however, and reversed the Ohio Supreme Court's vacation of the defendant's conviction. The Court explained that whether a person has been illegally seized for purposes of the Fourth Amendment depends upon whether the actions of the officer during the encounter with the person are "reasonable." The Court noted that the subjective intent of the officer has no role in the ordinary probable cause Fourth Amendment analysis. Citing *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996), the Court noted that the subjective intentions of the officer do not make the continued detention of the defendant illegal under the Fourth Amendment. Rather, the Court stated that the Fourth Amendment test for a valid consent to search is that the consent be voluntary and that voluntariness is a question of fact to be determined from the totality of the circumstances. The Court explicitly rejected the use of a per se

rule such as that implemented by the Ohio Supreme Court to gauge whether the detention of the defendant was unreasonable and, therefore, illegal.

In the case at bar, the Court of Appeals considered the facts of this case and concluded that Peters improperly detained Ready after the warning was issued. The Court of Appeals opined that it was clear that Peters was attempting to exploit the situation. Given the fact that it was nighttime, Ready was alone in the car, and the stop occurred off a dirt road, Ready's consent was insufficient to purge the taint of what the court considered an illegal detention. The court held that absent probable cause or reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the detention of a citizen for questioning, no matter how briefly, after the purpose of a traffic stop has been accomplished is an unreasonable seizure and a violation of the 14th Amendment.

As we described above, however, the *Robinette* Court affirmatively rejects this "per se" understanding of *Terry*. Rather, the determination of whether a consent to search is voluntarily given is a question of fact to be determined from the totality of the circumstances surrounding the giving of consent. *Ohio v. Robinette*, ___ U.S. ___, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996). To this end, a trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. McCleery*, 251 Neb. 940, 560 N.W.2d 789 (1997); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

The district court held that Ready voluntarily consented to the search of her vehicle and purse. The evidence supports this finding. Peters testified that after he gave Ready a warning ticket for failing to signal a turn, he returned Ready's driver's license and vehicle documents to her. Peters stated that he then asked her a series of three questions: "[D]o you have any weapons in your car?" "[D]o you have any drugs in your car?"

"[D]o you have anything at all that's illegal in your car?" Ready answered in the negative to each of the questions.

Peters then asked Ready if it would be all right with her if he searched her car. At trial, Peters could not recall the words with which Ready responded, but he testified that she did not have any objection to Peters searching the car. Peters testified that he told Ready he would like to search the trunk first and that Ready went to get the keys out of the ignition. Ready retrieved the keys from the ignition and returned to the trunk while clutching her purse.

Peters testified that after he finished searching the trunk, he asked Ready if he could search her purse. Peters could not remember if Ready responded verbally, but he recalled that Ready then handed him the purse. Peters indicated that he did not take the purse from Ready, but that she simply handed it to him without resistance. Peters stated that after Ready consented to the search of her car and purse, she never attempted to revoke her consent or asked that Peters stop the search.

In sum, the evidence shows that Peters asked Ready if he could search her vehicle and that Ready agreed to let Peters search the vehicle. When Peters asked Ready if he could search her purse, she handed the purse to him. There is no evidence that Peters overtly or subtly coerced Ready or offered her any inducements to submit to the search. Cf. *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). As in *Prahin*, the evidence indicates that Ready not only voluntarily consented to the search, but also voluntarily participated in the search by retrieving the keys to the car so that the trunk could be opened and eventually handing Peters her purse. See *State v. Forney*, 181 Neb. 757, 150 N.W.2d 915 (1967) (defendant's opening of automobile trunk for officer's inspection suggested voluntariness of consent). Cf. *U.S. v. Brown*, 102 F.3d 1390 (5th Cir. 1996).

In view of the totality of the circumstances, the district court's finding that Ready's consent was voluntary was not clearly erroneous, and Ready's conviction should not have been vacated. Therefore, the decision of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals with directions to reinstate the conviction and sentence.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, C.J., dissenting.

The justification for the detention in this case had expired. The continued detention was clearly illegal and tainted the purported consent for the search of the vehicle.

I agree with the opinion of the Court of Appeals.