STATE OF NEBRASKA, APPELLEE, V.
DERRICK E. TIERNEY, APPELLANT.
584 N.W. 2d 449

Filed August 4, 1998.   No. A-97-1154.

David L. Kimble, Seward County Public Defender, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HANNON, IRWIN, and INBODY, Judges.

HANNON, Judge.

Derrick E. Tierney appeals from his convictions for one count of obstructing a police officer, a violation of Neb. Rev. Stat. § 28-906 (Reissue 1995), and one count of possession of a controlled substance, a violation of Neb. Rev. Stat. § 28-416 (Reissue 1995). Summarized, Tierney contends that the court erred in overruling his motion to suppress and in imposing excessive sentences. Because the arresting officer did not have reasonable suspicion to conduct a pat-down search of Tierney, we now reverse Tierney's conviction for possession of a controlled substance under § 28-416 and remand with direction to dismiss. However, Tierney's conviction and sentence under § 28-906 are affirmed.

## FACTUAL BACKGROUND

On December 5, 1996, at approximately 5:30 p.m., Trooper Paul Hattan of the Nebraska State Patrol heard the Nebraska State Patrol communication center ask a fellow trooper to check a vehicle that was on a gravel county road southwest of Pleasant Dale, Seward County, Nebraska. According to Hattan, "[s]ome one had called in and stated that the vehicle had been parked there approximately five hours and that party was concerned about the individual there in the vehicle, that they may have a medical emergency." Upon arriving at the specified location, Hattan observed a vehicle parked, and not running, on the right-hand side of the road facing east. Hattan further observed a white male in the driver's seat. Hattan pulled alongside the vehicle, exited his patrol car, and approached the driver. After

the driver rolled down his window, Hattan asked him "if everything was okay." The driver responded that he was not feeling well and that he had parked there until he felt better, at which time he would continue on to Lincoln. According to Hattan, the driver stated originally that he had been coming from York, where he had gotten very intoxicated the-night before, and that he became sick and decided to stop and rest until the following morning. During this conversation, Hattan observed that the driver was "very nervous, uneasy," and also that his pupils were "very dilated." Hattan testified that his prior training indicated that such characteristics meant either that there was a medical problem or that the driver was under the influence of a controlled substance.

After making the aforementioned observations, Hattan asked the driver for some identification and the paperwork to the vehicle. The driver provided Hattan with his Nebraska driver's license, revealing that he was Tierney, and a rental agreement to the vehicle. Hattan then had Tierney exit the rental car and accompany him to the inside of his patrol car. At that point, Hattan checked Tierney's driving records, checked for prior convictions, and checked to make sure that the vehicle was not stolen. Hattan testified that such inquiries are standard procedure. Hattan was subsequently informed by the Nebraska State Patrol communication center that although Tierney's license was not under suspension and the vehicle was not stolen, Tierney did have prior drug convictions.

While Tierney was inside the patrol car, Hattan observed that Tierney appeared to still be "very nervous," that he was unable to sit in a seated position for very long, and that "[h]e appeared to be lost and sometimes his attention appeared to be divided at certain times during certain questions." Hattan also testified that Tierney took longer than usual to answer simple questions. Additionally, while in the patrol car, Tierney stated that he had been coming from Waco. Hattan testified that he considered this to be different from Tierney's previous statement that he had been coming from York. Hattan further testified that he noted the inconsistency between Tierney's statements that he had been there since the night before and the dispatch report which indicated that the vehicle had been there for approximately 5

hours. Based on his training in drug recognition and experience as a law enforcement officer, Hattan testified that Tierney appeared to be under the influence of drugs.

Hattan next proceeded to ask Tierney if he had any illegal controlled substances or weapons inside the vehicle. Tierney replied that he did not have either. Hattan next asked Tierney for permission to search the interior of his vehicle. Hattan testified that Tierney voluntarily gave him the permission to search by stating "in an affirmative manner yes." Hattan testified that he did not threaten or make Tierney any promise to elicit the consent. At that point, Hattan had Tierney step outside of the patrol car. Hattan then asked Tierney if he had any weapons or illegal controlled substances on his person, in order "to make sure for officer safety that he did not have any weapons on his person." Hattan admitted that he did so because he wanted to be sure that he was safe while Tierney was placed elsewhere and, additionally, because of Tierney's "manner," he was concerned for his safety that Tierney might have a weapon. Tierney replied that he did not have any weapons. Hattan testified that Tierney's movements were "very quick," that he did not appear to want to sit or stand still, that he would not make eye contact, and that he kept looking away from Hattan. Hattan additionally admitted that he observed Tierney's eyes to be still dilated well beyond the normal position.

Hattan then advised Tierney that he was going to pat him down to "make sure he did not have any weapons." However, Hattan admitted that he had not seen anything that made him think that Tierney might have been carrying any kind of weapon. Hattan further admitted that he was going to pat Tierney down because Hattan was going to be in a position where he could not see Tierney while he searched the vehicle. According to Hattan, Tierney did not respond. Hattan then proceeded to pat Tierney down, pursuant to standard procedure. At that point, Tierney "took his left hand and shoved it down into his left pants' pocket in a hurried manner." Hattan grabbed Tierney's hand to try to control Tierney in case he pulled a weapon, and a struggle ensued. At some point, Tierney got his left hand out of his pocket and threw a small piece of paper onto the ground. The two wrestled to the ground, at which time

Trooper Michael Tumblesom of the Nebraska State Patrol arrived and helped control Tierney. Tumblesom placed Tierney in handcuffs while Hattan walked over and picked up the discarded paper. Hattan opened up the paper and found a small amount of a brownish-white, powdery substance in rock form. This substance was later tested to be methamphetamine. After having received his *Miranda* warnings, Tierney admitted that the methamphetamine was his and that it was just for his personal use.

After Tierney was charged with one count of obstructing a police officer and one count of possession of a controlled substance, he filed a motion to suppress the methamphetamine evidence. The district court overruled the motion, orally finding as follows:

> The facts are not in dispute, I will find that the officer's approach to the vehicle was reasonable, that his initial encounter with Mr. Tierney was an essential encounter and he left it reasonably.
>
> When he asked Mr. Tierney to come back to his vehicle, there was nothing inappropriate there. That it was reasonable based upon his observations and the information he had received about Mr. Tierney's record and about Mr. Tierney's behavior plus the observations, that he had cause to ask to search the vehicle. I'll find that the consent to search the vehicle was voluntary.
>
> The trooper did not need consent to conduct a pat down under any circumstance, and then when Mr. Tierney quickly reached into his pocket, the officer most certainly did not need consent, and that I feel was reasonable trying to find out what was in the left hand that was going in the pocket in a hurry and what was in the pocket. The seizure of the paper containing the substance was appropriate.

After a bench trial, the court found Tierney guilty of both charges and sentenced him to not less than 1 year's imprisonment on the obstructing an officer charge and not less than 2 nor more than 4 years' imprisonment on the possession charge, to be served concurrently. Tierney now appeals.

## ASSIGNMENTS OF ERROR

Tierney assigns as error (1) the court's overruling of his motion to suppress, which necessarily includes the court's find-

ing that at the time of the contact, Hattan was possessed of sufficient articulable facts to raise reasonable suspicions of further criminal activity which, in turn, supported continued detention and a search of Tierney, and (2) the court's imposition of excessive sentences, which included its failure to place him on probation.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress evidence obtained through a warrantless search, an appellate court conducts a de novo review of determinations of reasonable suspicion and probable cause. *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998). Once the determinations of reasonable suspicion and probable cause have been reviewed de novo, the appellate court reviews the trial court's findings of fact, giving due weight to the inferences drawn from those facts by the trial judge. *Id.* In making this review, the appellate court does not reweigh the evidence or resolve conflicts in the evidence, but recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

In reviewing rulings on a motion to suppress evidence, an appellate court considers all the evidence at trial, as well as at the hearing on the motion. *State v. Huffman*, 181 Neb. 356, 148 N.W.2d 321 (1967), *cert. denied* 386 U.S. 1024, 87 S. Ct. 1384, 18 L. Ed. 2d 466.

## ANALYSIS

Tierney argues that both the continued detention of his person after receipt of the fruitless radio check and the pat-down search of his person constituted violations of his Fourth Amendment rights.

*Officer's Request for Consent to Search Vehicle.*

In summary, the facts are as follows: (1) Hattan had an initial conversation with Tierney while Tierney was in the driver's

seat of his car; (2) Hattan then asked Tierney to accompany him back to Hattan's patrol car, which Tierney did; (3) Hattan ran a radio check on Tierney, his license, and his car; (4) Hattan received notice that although Tierney had prior drug convictions, he had no outstanding violations and, further, that Tierney's car was not stolen; (5) Hattan asked if Tierney had any weapons or drugs in his car, and Tierney replied in the negative; (6) Hattan asked for and received consent to search Tierney's vehicle; (7) Hattan then proceeded to perform a patdown search of Tierney; and (8) Tierney thrust his left hand in his pocket, resulting in the wrestling match and discovery of the methamphetamine.

There are three levels of police-citizen encounters: (1) a voluntary stop with noncoercive questioning; (2) an investigative stop based upon reasonable suspicion that criminal activity is afoot, where the officer uses the least intrusive methods reasonably available to rapidly dispel or verify his suspicions; and (3) a full-blown arrest in which the citizen is typically taken into the custody of the officer. *State v. Chronister*, 3 Neb. App. 281, 526 N.W.2d 98 (1995). See *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), *cert. denied* 510 U.S. 836, 114 S. Ct. 113, 126 L. Ed. 2d 78. Tierney does not complain about the initial contact that took place at his vehicle or about the fact that Hattan asked him to go to the patrol car, and for purposes of this appeal, we need not decide whether such were level one or level two encounters. Tierney does, however, argue that Hattan's questioning of him, following the completion of his investigation into his well-being and the receipt of the radio check revealing no outstanding violations, constituted an unconstitutional detention.

A similar situation was presented in *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997), where after a Nebraska State Patrol trooper gave the appellant, Michele Ready, a warning ticket and returned her driver's license and vehicle documents to her, the officer asked Ready if she had any weapons, drugs, or anything illegal in her car. Ready answered in the negative. The officer then asked if he could search Ready's car, which she did not object to, and, after doing so, asked if he could search her purse. Ready then handed the officer her purse, in which the

officer found methamphetamine. The trial court overruled Ready's motion to suppress the evidence seized from her purse. This court then reversed that ruling, finding that the consent was given during an illegal detention and, therefore, was not voluntary. See *State v. Ready*, 5 Neb. App. 143, 556 N.W. 2d 264 (1996).

On petition for further review in *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997), the Nebraska Supreme Court concluded that the issue was not whether Ready was illegally detained, but, rather, whether the consent to search was given voluntarily. In doing so, the court adhered to the U.S. Supreme Court's holdings in *Ohio v. Robinette*, 519 U.S. 417, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996), that (1) the Fourth Amendment does not require that a lawfully seized defendant be advised that he or she is legally "free to go" before his or her consent to search will be recognized as voluntary and (2) the Fourth Amendment test for a valid consent to search is that the consent be voluntary and that voluntariness is a question of fact to be determined from the totality of the circumstances. *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997). See, also, *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998). Based upon the totality of the circumstances, the Nebraska Supreme Court could not say that the trial court's finding that Ready's consent was voluntary was clearly erroneous. Compare, *State v. Chitty, supra*; *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990).

For purposes of argument in the present case, we will assume that the investigation was completed upon receipt of the radio check. Hattan then asked if Tierney had any weapons or drugs in his vehicle, to which he replied in the negative. Hattan then asked for consent to search Tierney's vehicle, and according to Hattan, Tierney voluntarily consented. There is no evidence that Hattan coerced or offered Tierney any inducements to do so. Thus, the trial court's finding that Tierney's consent was voluntary was not clearly erroneous. There was no constitutional violation.

*Pat-Down Searches.*

With regard to pat-down searches, Nebraska adheres to the following rule:

In *Terry* [*v. Ohio*], the Supreme Court held that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot, the officer may briefly stop the suspicious person and make reasonable inquiries aimed at dispelling his suspicions. In addition, the Court held that if, after identifying himself and making initial inquiries which do not dispel his reasonable suspicions, the officer "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon." *Terry v. Ohio*, 392 U.S. 1, 24, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*State v. Craven*, 253 Neb. 601, 606-07, 571 N.W.2d 612, 617 (1997). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997).

▮ The sole justification of a pat-down search for weapons is the protection of the officer and other persons nearby. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Williams*, 249 Neb. 582, 544 N.W.2d 350 (1996). Therefore, the scope of the search must be confined to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments which could be used to assault the police officer. *Terry v. Ohio, supra*; *State v. Williams, supra.*

▮ We agree with the observations previously made by a member of this panel in a similar case. See *State v. Smith*, 96 NCA No. 49, case No. A-96-856 (not designated for permanent publication). When conducting a pat-down search for weapons, an officer must have a reasonable suspicion that the individual he or she is searching is armed and dangerous. A blanket policy that would allow an officer to conduct a pat-down search on any individual stopped for any reason regardless of individualized suspicion is violative of constitutional rights and is specifically disapproved. In the absence of, at least, reasonable suspicion

that the individual is armed and dangerous, an individual's consent to search a vehicle does not also grant consent to search that individual's person.

In the instant case, Tierney's consent to search was limited to a search of his vehicle. He did not consent to the search of his person, where the drugs were ultimately discovered. Thus, the search of Tierney's person was not conducted pursuant to consent, and consequently, in order to lawfully conduct a pat-down search of Tierney's person, Hattan must have had a reasonable suspicion that Tierney was armed and dangerous. Thus, the only issue is whether Hattan had a reasonable suspicion that Tierney was armed and dangerous.

Hattan testified that he patted Tierney down as part of standard procedure and because he would not be able to watch Tierney while he searched Tierney's vehicle. Hattan admitted that he had not seen anything that made him think that Tierney might have been carrying a weapon. Hattan's only proffered reason which was specific to Tierney was that he was "acting very nervous." As noted by the court in *U.S. v. McRae*, 81 F.3d 1528 (10th Cir. 1996), nervousness alone is not sufficient to justify further detention; only in combination with other suspicious circumstances may it contribute to a finding of reasonable, articulable suspicion. As a result, Hattan did not have a reasonable suspicion that Tierney was armed and dangerous, justifying a pat-down search. The fact that Tierney thrust his hand into his pocket once the pat-down search began is irrelevant, as the search was already unconstitutional. Thus, evidence of the methamphetamine must be suppressed.

While Tierney preserved his objections to the admission of the methamphetamine at trial, he did not object to the testimony concerning his struggle with the officer. Therefore, we reverse only the conviction for possession of a controlled substance. With respect to Tierney's argument that his sentence was excessive on the remaining conviction, we find that the sentence was within the statutory limits and, considering his prior criminal record, not an abuse of the trial court's discretion. See, *State v. Aguirre-Rojas*, 253 Neb. 477, 571 N.W.2d 70 (1997); § 28-906; Neb. Rev. Stat. § 28-106 (Reissue 1995). As such, Tierney's

conviction and sentence on the obstruction of justice charge are affirmed.

## CONCLUSION

Tierney's conviction for possession of a controlled substance is reversed and remanded with direction to dismiss. Tierney's conviction and sentence for obstructing a police officer is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTION TO DISMISS.