STATE OF NEBRASKA, APPELLEE, V.
WILLIAM D. TUCKER, APPELLANT.
636 N.W.2d 853

Filed December 21, 2001.    No. S-00-1122.

Dennis R. Keefe, Lancaster County Public Defender, and Shawn Elliott for appellant.

Don Stenberg, Attorney General, and Thomas J. Olsen for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

The charges in this case arise from a 1997 warrantless search of William D. Tucker's home, wherein certain illegal items were recovered. A hearing was held on Tucker's motion to suppress the items recovered in the search, and the motion was overruled.

After a stipulated trial, Tucker was found guilty of two counts of possession of a controlled substance, both Class IV felonies. Tucker was sentenced to two consecutive prison terms of 15 to 30 months each. Tucker now appeals the findings of the trial court and the sentences imposed by the trial court. We affirm.

## BACKGROUND

In November 1997, Lincoln police officer Thomas Ward received a dispatch call around midnight. He was informed that the occupant of an apartment located at 134 South 17th Street in Lincoln was complaining about the odor of marijuana coming from the apartment below. Ward was met by Officers Charles Marti and Michael Bassett, who also responded to the call. Ward was the lead investigator in the case. The uniformed officers determined that the odor was coming from apartment No. 5, which was below the complainant's apartment, and made contact with Tucker, who lived in apartment No. 5.

Ward explained to Tucker that the officers had come to his residence because of a complaint of a marijuana odor. Tucker initially denied that the odor was coming from his apartment, but after Ward repeated why the officers were there, he admitted that he and some others had "smoked a joint." Tucker then pulled a roach clip from his pocket and handed it to Ward. The exchange between Ward and Tucker lasted about a minute and a half. Ward then asked Tucker if the officers could enter his apartment and look for more items. He also told Tucker that if he had any more illegal items, now would be a good time to get rid of them. Tucker told Ward it was not necessary for the officers to enter his apartment because he had no more items. Ward testified that he thought he used the term "search" but could not remember the exact terminology.

Ward continued to tell Tucker that he believed it was necessary for the officers to come in and look for illegal items. Tucker then went into the bedroom of his apartment, grabbed a newspaper, and placed it on a chair. He dumped the contents of a tray into the newspaper, wadded it up, and gave it to the officers. Ward opened up the newspaper and found several leftover joints, ashes, and stems of marijuana. Ward could see into the bedroom from where he was standing in the doorway leading into the

apartment from the hallway. According to Ward, this exchange lasted approximately 2 minutes.

Ward again asked Tucker if the officers could enter the apartment. Tucker refused, stating that the officers would "mess up" his apartment. Ward stated that the officers would leave the apartment the way they had found it. Bassett told Tucker that he would accompany Tucker inside the apartment, staying at his elbow. Marti testified that he believed Tucker may have wanted the officers only to come in and look around to see that there was nothing there, as evidenced by Tucker's gesturing to different areas of the room, claiming there was nothing in the room.

After Tucker was told that an officer would stay by his side, he was asked if the officers had permission to come in. Tucker stepped back and gestured with his arms raised and his hands upward and outward. When asked by Ward if that meant the officers could come in, he said yes. Ward testified that the officers may have also discussed the possibility of obtaining a search warrant during their contact with Tucker. Bassett did not recall any discussion about obtaining a search warrant. Ward testified that had Tucker refused to consent to the search, he would have been cited for drug paraphernalia and would not have been arrested, yet Ward also stated that he considered Tucker to be under arrest and not free to leave.

After Tucker gave the officers permission to enter his apartment, the officers came in and began to search. Ward went into the bedroom and found a silver hand-held scale and a Ziploc bag with screens on it on top of one dresser, and a brass marijuana pipe on top of another dresser. According to all three officers, Tucker at no point requested that they stop searching, nor did he tell the officers that he did not consent to the search of the drawers in his bedroom. Tucker was cooperative and even helped the officers locate a "bong" by opening a kitchen drawer. The officers found 2.67 grams of cocaine and 2.99 grams of amphetamine within the dresser drawers in the bedroom. Tucker was then arrested.

Tucker claims that he was repeatedly harassed by the officers' requests to enter his apartment. He testified that he asked the officers whether the term "search" meant simply to look around and that the officers said yes. The trial court found that Tucker

did not limit his consent to search in spite of his claims that he gave consent to only a limited "visual search." Tucker also testified that the officers agreed that visually looking around the apartment does not mean "opening and closing drawers and such." When the officers began to search through drawers, Tucker claims to have verbally objected to their actions. According to Tucker, the officers did not respond and kept looking through the drawers.

Tucker was charged with count I, possession of a controlled substance with intent to deliver (marijuana), a Class III felony in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1995), and counts II and III, possession of a controlled substance (cocaine and amphetamine), Class IV felonies in violation of § 28-416(3). Tucker filed a motion to suppress the evidence seized in the warrantless search of his apartment, and a hearing on the matter was held on May 12, 1998. The trial court overruled Tucker's motion, finding that his consent was freely and voluntarily given and was not the product of coercion, intimidation, or anything promised or threatened in exchange for consent. Tucker also moved to dismiss on speedy trial grounds, but that motion was overruled by the trial court. Tucker appealed that decision, and this court affirmed the denial of the motion. See *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000).

Tucker waived his right to a jury trial in exchange for dismissal of count I. Tucker then appeared for a stipulated trial on the two remaining counts. The State offered testimony from the suppression hearing. In order to preserve the suppression issue for appeal, Tucker objected to the portions of the testimony which the State elicited regarding the search. Based upon the evidence presented at the stipulated trial, Tucker was found guilty on both counts of possession of a controlled substance.

Tucker was sentenced to prison for 15 to 30 months on both counts, to run consecutively. He was given 17 days' credit for time served.

## ASSIGNMENTS OF ERROR
Tucker claims, rephrased, that the trial court erred in (1) overruling his motion to suppress and admitting the results of

the search into evidence at his trial and (2) imposing excessive sentences.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, will be upheld unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Strohl*, 255 Neb. 918, 587 N.W.2d 675 (1999); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

■ Voluntariness of consent to search is a question of fact to be determined from all the circumstances. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998), *cert. denied* 525 U.S. 857, 119 S. Ct. 139, 142 L. Ed. 2d 112.

■ The standard for measuring the scope of a suspect's consent under the Fourth Amendment to the U.S. Constitution is that of objective reasonableness: What would the typical reasonable person have understood by the exchange between the officer and the suspect? *State v. Claus*, 8 Neb. App. 430, 594 N.W.2d 685 (1999).

■ Whether there were any limitations placed on the consent given and whether the search conformed to those limitations are questions of fact to be determined by the totality of the circumstances. *U.S. v. Blake*, 888 F.2d 795 (11th Cir. 1989).

■ An appellate court will not disturb sentences that are within statutory limits unless the district court abused its discretion in establishing the sentences. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001).

## ANALYSIS

Tucker's first assignment of error involves two issues: (1) whether Tucker's voluntary and free consent to the search is evident under the totality of the circumstances and (2) whether it was objectively reasonable for the officers to consider the scope

of Tucker's consent to search his apartment to include areas where additional contraband may be hidden.

## Consent to Search

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, will be upheld unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Strohl, supra*; *State v. Konfrst, supra.*

■ It is well settled under the Fourth Amendment that warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions. *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001). One of those specifically established exceptions is a search undertaken with consent. *Id.* See, also, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

■ To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne. Consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological. *State v. Chitty, supra.* The determination of whether consent to a search is voluntarily given is a question of fact to be determined from the totality of the circumstances surrounding the giving of consent. *State v. Graham*, 241 Neb. 995, 492 N.W.2d 845 (1992). See, also, *State v. Chitty, supra.*

The question is therefore whether, under the totality of the circumstances, the trial court committed clear error in finding that Tucker voluntarily gave consent to the officers to search his home.

According to Tucker, the record establishes that he did not voluntarily consent to a search. He argues that (1) the presence of three uniformed and armed officers at Tucker's door late in the evening, (2) repeated requests by the officers for consent to search his apartment, and (3) statements by the officers that they could obtain a search warrant if consent was not given are factors that demonstrate involuntariness.

While it is true that mere submission to authority is insufficient to establish consent to a search, see *State v. Walmsley*, 216 Neb. 336, 344 N.W.2d 450 (1984), Tucker's actions that evening amounted to more than mere submission. According to *State v. Juhl*, 234 Neb. 33, 42, 449 N.W.2d 202, 209 (1989), a defendant's right to be free from unreasonable search and seizure was not violated when, in response to a question from a police officer as to what he had in his jacket, the defendant raised his right arm and said, " '[C]heck.' " This court noted that those actions by the defendant, in light of the fact that there was no evidence of any physical force used against the defendant, constituted an unequivocal invitation for the police to search the jacket. *Id.*

In the instant case, after a request to search his home, Tucker responded by stepping back and gesturing with his arms raised and his hands outward and upward. He also answered "yes" to the question of whether that meant the officers could search his home. There is no evidence that the officers used force or even threatened force.

The repeated requests by the officers to search Tucker's home prompted Tucker to produce various items of contraband. Tucker denied he possessed drugs, but then produced drugs and drug paraphernalia of his own volition. The consent Tucker gave to enter the apartment was likewise voluntary and was not a product of a will overborne.

Tucker also argues that his consent was not voluntary because the officers threatened to get a search warrant. In *State v. Rathburn*, 195 Neb. 485, 239 N.W.2d 253 (1976), a police officer asked the defendant to open the trunk of his car so the officer could search it. The defendant declined the request, and the officer responded by saying, " 'Okay, I'll get a warrant.' " *Id.* at 489-90, 239 N.W.2d at 256. The defendant then voluntarily assented to the search. The defendant argued that the officer's statement amounted to coercion, but this court did not agree, stating:

> There is no doubt that false assertions that one already *has* a warrant will vitiate a consent to search. . . . However under the facts of the instant case, all the officer said was that he would *get* a warrant. In situations where the searching officer has stated that he could obtain or was in the process of

getting a warrant, the courts have never found such a statement coercive per se. Rather, the courts have generally looked at the statement made by the officer to determine if it was coercive in the particular factual situation.

(Emphasis in original.) *Id.* at 490, 239 N.W.2d at 256.

■ Tucker twice voluntarily supplied the officers with illegal items from his apartment before the search commenced. Based upon this series of events, the officers could have obtained a warrant. A statement of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion. *State v. Rathburn, supra.*

The trial court's finding that consent was freely and voluntarily given and was not the product of coercion, intimidation, or anything promised or threatened in exchange for consent is not clearly erroneous.

## SCOPE OF SEARCH

■ Tucker claims that even if the consent to search was given, the search conducted exceeded the scope of the consent. A search of a home that is made pursuant to consent may not exceed the scope of consent. *State v. Sutton,* 231 Neb. 30, 434 N.W.2d 689 (1989).

■ The question thus becomes whether the officers were reasonable in believing that the scope of Tucker's consent included areas in the home where additional contraband may be hidden. Tucker argues that he clearly never consented to a thorough search of his apartment, rather, he consented only to letting the officers come inside and visually look around. However, recitation of magic words is unnecessary to give consent to a search. *U.S. v. Stewart,* 93 F.3d 189 (5th Cir. 1996), citing *U.S. v. Rich,* 992 F.2d 502 (5th Cir. 1993), *cert. denied* 510 U.S. 933, 114 S. Ct. 348, 126 L. Ed. 2d 312. The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, that is, what the typical reasonable person would have understood by the exchange between the officer and the suspect. *Florida v. Jimeno,* 500 U.S. 248, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991); *State v. Claus,* 8 Neb. App. 430, 594 N.W.2d 685 (1999). See, also, *U.S. v. Stewart, supra.* The key inquiry focuses on what the typical reasonable person would

have understood by the exchange between the officer and the suspect. Whether any limitations were placed on the consent given and whether the search conformed to those limitations are questions of fact to be determined by the totality of the circumstances. See *U.S. v. Blake*, 888 F.2d 795 (11th Cir. 1989).

In *U.S. v. Stewart, supra*, because the defendant knew the object of the search was drugs, the court held that the police officer's looking in a prescription bottle after being given permission to look at the bottle was objectively reasonable.

In *U.S. v. Coffman*, 148 F.3d 952, 953 (8th Cir. 1998), where the defendant said, " ' "[G]o ahead and look around. You won't find a thing," ' " the court held that a " 'typical reasonable person' " would not have understood the defendant to be permitting only a limited search of his residence.

In the instant case, the officers searching Tucker's apartment had reasonable suspicion that Tucker possessed illegal drugs therein, because they were called to his apartment based on a complaint of marijuana odor and smelled the odor themselves. They specifically indicated to Tucker why they were at his door, so Tucker would reasonably have known that the purpose of any requested search would be to look for illegal drugs, which could be hidden in closed drawers or cabinets. Tucker should, therefore, reasonably have known that any request to search would be a request to have a closer look for illegal drugs and drug paraphernalia rather than a simple visual scan around the apartment. These events would lead a reasonable person to believe that the search of Tucker's apartment was within the scope of consent he gave, despite the fact that Tucker testified that he clearly did not give consent.

Tucker's actions in regard to the scope of the search were not consistent with what he testified he told the officers. He clearly aided the officers by producing contraband from his kitchen, and he did so of his own volition. This is directly at odds with his statement that he gave consent for only a visual search and that he did not consent to the officers' going through his drawers. Additionally, all three officers testified that Tucker did not object or try to stop the officers from continuing the search despite his stated belief that, by the officer's agreeing to stay at his elbow, it meant that the officers would conduct only a visual search.

Thus, under the circumstances present in this case, we conclude that it was objectively reasonable for the officers to determine that the scope of consent given by Tucker covered the drawers, cabinets, and other places where contraband could be hidden. See *U.S. v. Rich*, 992 F.2d 502 (5th Cir. 1993).

## EXCESSIVE SENTENCE

In his second assignment of error, Tucker argues that the trial court erred by imposing an excessive sentence. According to *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001), an appellate court will not disturb sentences within statutory limits unless the district court abused its discretion in establishing the sentences. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Gutierrez*, 260 Neb. 1008, 620 N.W.2d 738 (2001). Additionally:

> In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime.

*State v. Urbano*, 256 Neb. 194, 216, 589 N.W.2d 144, 159 (1999), citing *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997). In considering a sentence, a court is not limited in its discretion to any mathematically applied set of factors. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995).

Tucker is 42 years old; has been using marijuana since he was 15 years old, together with other drugs; has had five driving under the influence convictions; and has been in prison three times on five different drug charges. Tucker has been arrested approximately 30 times in his adult life.

We thus conclude that through an assessment of the factors discussed in *State v. Urbano, supra*, the trial court did not abuse

its discretion when it sentenced Tucker to two consecutive prison terms of 15 to 30 months each.

## CONCLUSION

Based on the above, we determine that the trial court's decision to overrule Tucker's motion to suppress was correct. We further conclude that the trial court did not abuse its discretion in sentencing Tucker. We thus affirm the ruling of the trial court on the motion to suppress and the sentences imposed.

AFFIRMED.