IN RE INTEREST OF CLINTON G., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
CLINTON G., APPELLANT.
669 N.W.2d 467

Filed September 23, 2003. No. A-02-1165.

Dennis R. Keefe, Lancaster County Public Defender, and Andrea D. Snowden for appellant.

Gary E. Lacey, Lancaster County Attorney, and Daniel D. Packard for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Clinton G., date of birth August 6, 1984, appeals from an adjudication order entered by the separate juvenile court of Lancaster County upon a petition alleging that Clinton had possessed marijuana and drug paraphernalia. On appeal, Clinton challenges the juvenile court's order overruling his motion to suppress. Because we find that there was no unlawful seizure of Clinton and that he gave valid consent for a search of his person, we find no error by the juvenile court, and the adjudication order is affirmed.

## II. BACKGROUND

On March 30, 2002, at approximately 1 a.m., Officer Jeff Bliemeister of the Lancaster County sheriff's office initiated a traffic stop of a vehicle Bliemeister observed being driven without a front license plate. Bliemeister obtained identification from the driver, Tony Kuligowski, as well as from the only passenger in the vehicle, Clinton. Bliemeister then ran license and warrant checks on both individuals, which checks indicated that there were no outstanding warrants for either, but that both had previous contacts with law enforcement for possession of marijuana and drug paraphernalia. Bliemeister completed warning tickets for the lack of a front license plate, a cracked front windshield, and the failure of both Kuligowski and Clinton to wear seat belts.

Bliemeister had Kuligowski exit the vehicle and then explained the warning tickets to Kuligowski. Bliemeister asked Kuligowski if he had consumed any alcohol or drugs, to which

question Kuligowski responded in the negative. Bliemeister then requested consent to search Kuligowski's person for guns, knives, drugs, or drug paraphernalia. Kuligowski gave consent to a search of his person, and Bliemeister searched Kuligowski and discovered no contraband.

Bliemeister then asked Clinton to exit the vehicle. Bliemeister asked Clinton if he had consumed any alcohol or drugs, to which question Clinton responded in the negative. Bliemeister then requested consent to search Clinton's person for guns, knives, drugs, or drug paraphernalia. Clinton responded, "[G]o ahead." When Bliemeister searched Clinton's person, he found marijuana, a marijuana pipe, and a large amount of cash. Bliemeister then requested consent to search Kuligowski's vehicle, to which request Kuligowski responded in the negative.

Bliemeister testified that Clinton was cooperative throughout this encounter, that he did not appear to be under the influence, and that Clinton made no furtive movements. Bliemeister further testified that he never made any threats or promises to Clinton, that he spoke to Clinton in a conversational tone, and that Clinton was free to leave at any time. Clinton similarly testified that Bliemeister asked Clinton to exit the vehicle and for consent to search, used a normal tone of voice, and made no threats or promises.

On May 1, 2002, an amended petition was filed in the juvenile court alleging that Clinton was a juvenile as defined by Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 2002) and that Clinton had possessed less than 1 ounce of marijuana on or about March 30. On August 15, Clinton filed a motion to suppress alleging that the evidence obtained by Bliemeister was obtained as a result of an illegal seizure, a warrantless search, and an ineffective consent to search. On September 13, a hearing was held on Clinton's motion to suppress. At the conclusion of the hearing, the court overruled the motion to suppress. After a stipulated adjudication hearing, the juvenile court found the allegations of the petition to be true. This appeal followed.

### III. ASSIGNMENT OF ERROR

On appeal, Clinton challenges the court's overruling of his motion to suppress.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach conclusions independent of the trial court's findings. *In re Interest of Chad S.*, 263 Neb. 184, 639 N.W.2d 84 (2002). In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's ruling. *Id.*

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *In re Interest of Andre W.*, 256 Neb. 362, 590 N.W.2d 827 (1999); *In re Interest of Frederick C.*, 8 Neb. App. 343, 594 N.W.2d 294 (1999). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *In re Interest of Frederick C., supra.*

### 2. *OSBORN* FINDINGS

We initially note that the juvenile court overruled Clinton's motion to suppress without making any findings of fact or law. As long ago as 1996, the Nebraska Supreme Court specifically held that "[h]enceforth, district courts shall articulate in writing or from the bench their general findings when denying or granting a motion to suppress." *State v. Osborn*, 250 Neb. 57, 67, 547 N.W.2d 139, 145 (1996). In that opinion, the Supreme Court recognized that specific findings of fact may be indispensable to a proper appellate review of a court's ruling on a motion to suppress because without such findings the appellate court may not know whether the trial court rejected a defendant's factual contentions or acted on some legal basis. Because a different standard of review applies to factual determinations and legal conclusions, knowing the basis of the trial court's denial of a motion to suppress is important. See *State v. Osborn, supra.*

Although the Supreme Court specifically referred to "district courts" when setting forth this mandate, we see no reason that the

requirement to articulate findings should not apply equally to any trial court ruling on a motion to suppress, including a juvenile court acting as in the present case, and we so hold. Nonetheless, in the present case, there is no dispute about the factual circumstances surrounding the search of Clinton's person, and we proceed to review the legality of the search even in the absence of specific findings from the juvenile court. See *id.* (in some cases, review of matter can proceed in absence of specific findings).

### 3. DISCUSSION

### (a) Unlawful Seizure

Clinton argues that Bliemeister was not justified in continuing to detain Clinton after the initial traffic stop was complete. Clinton alleges that detaining him after Bliemeister had given Kuligowski the warning citations and returned Kuligowski's license and registration constituted an unreasonable detention, because Bliemeister did not have reasonable suspicion that Clinton was engaged in criminal activity. Clinton argues that the facts of the present case are similar to the facts of *State v. Anderson,* 258 Neb. 627, 605 N.W.2d 124 (2000). We disagree.

In *State v. Anderson, supra,* the Supreme Court held that a Nebraska State Patrol trooper had effected an unlawful seizure when he had completed a traffic stop, requested consent to search a vehicle, been refused such consent, and then told the driver to remain in the car while he awaited a canine unit to walk around the exterior of the car. The record in *State v. Anderson* indicated that the trooper specifically testified that the driver was not free to leave while awaiting the canine unit. The Supreme Court held that under the totality of the circumstances, a reasonable person who had refused to give consent to a search of the car would not have felt free to leave after being instructed to await a canine unit.

██ If there is no detention or seizure within the meaning of the Fourth Amendment to the U.S. Constitution, then the Fourth Amendment safeguard against an unreasonable seizure is not implicated in an encounter between a private citizen and a police officer. *State v. Anderson, supra.* A seizure in the Fourth Amendment context occurs only if, in view of all of the circumstances surrounding the incident, a reasonable person would

have believed that he or she was not free to leave. *State v. Anderson, supra*.

A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area, even if the officer has no reason to suspect the individual is involved in criminal activity, provided the officer does not indicate that compliance with his or her request is required. *Id.* Circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of a citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.*

In the present case, the circumstances do not warrant a finding that a reasonable person would not have felt free to leave. Although the purpose of the traffic stop was arguably completed, there were no circumstances present in this case which are indicative of a seizure. The testimony is uncontradicted that there was only one officer, that he did not display a weapon at any time, that he did not physically compel cooperation, that he spoke in a conversational tone, and that he never indicated that compliance with his request for Clinton to exit the vehicle or his request to search Clinton's person would be compelled. Clinton's own testimony confirms this. As such, the facts of this case are markedly different from *State v. Anderson, supra*, wherein a citizen specifically refused to grant consent to a search and was then instructed to remain on the scene and await the arrival of a canine unit.

If anything, the facts of this case are more similar to the facts of *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997). In that case, a female defendant was stopped at nighttime, off a dirt road, while alone in a car. After the purpose of the initial traffic stop was completed, the officer who made the traffic stop asked the defendant if she had any weapons, drugs, or anything illegal in her car and received consent to search both her trunk and her purse. This court found the consent invalid because of an illegal detention, but the Supreme Court reversed that finding. The Supreme Court found that based on the totality of the circumstances, the noncoercive questioning of the defendant after the traffic stop had concluded did not constitute an illegal detention and did not render invalid the subsequent consent to search.

■ It is a longstanding principle of law in Nebraska that police-citizen encounters involving no restraint of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen elicited through noncoercive questioning, do not rise to the level of a seizure. See, *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000); *State v. Aguirre-Rojas*, 253 Neb. 477, 571 N.W.2d 70 (1997); *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993); *State v. Runge*, 8 Neb. App. 715, 601 N.W.2d 554 (1999); *State v. Tierney*, 7 Neb. App. 469, 584 N.W.2d 461 (1998); *State v. Chronister*, 3 Neb. App. 281, 526 N.W.2d 98 (1995). Further, an officer need not give any warning to a citizen that he or she may freely refuse a request to search. *State v. Aguirre-Rojas, supra.* With respect to Clinton, the evidence in the present case indicates that Bliemeister approached Clinton and asked, in a conversational tone, if he could search Clinton's person. There is no evidence of any kind of coercive conduct on the part of Bliemeister, and the encounter between Clinton and Bliemeister bears all the earmarks of voluntary cooperation.

The appropriate question is whether a reasonable person would have felt free to decline Bliemeister's requests or otherwise terminate the encounter. See *Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). We see no reason to conclude that a reasonable person in Clinton's position would not have felt free to decline the request to search, in light of the Supreme Court's conclusion in *State v. Ready, supra*, that a woman stopped at nighttime, on a dirt road, alone, was capable of providing a voluntary consent to search.

The record in this case does not indicate that Clinton was seized within the meaning of the Fourth Amendment after the traffic stop was complete. As such, the Fourth Amendment safeguard against unreasonable seizures is not implicated in this case, and Clinton's assertions to the contrary are without merit. In view of the totality of the circumstances, the district court's decision overruling the motion to suppress was not clearly erroneous. See *State v. Ready, supra.*

### (b) Consent to Search

Clinton further asserts that the search of his person was unlawful because it was a warrantless search and because his consent was not voluntarily given. Specifically, Clinton argues that

the illegal detention tainted his consent and rendered it involuntary. Although we have already concluded that there was not an illegal seizure, we will further address the voluntariness of Clinton's consent.

Bliemeister's search of Clinton was a warrantless search. It is well settled under the Fourth Amendment that warrantless searches are per se unreasonable, subject to a few specifically established and well-delineated exceptions. *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001). One of those specifically established exceptions is a search undertaken with consent. *Id.*

 In order for a consent to search to be effective, it must be a free and unconstrained choice and not the product of a will overborne. *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000). See *State v. Tucker, supra.* A consent to search must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological. *State v. Dallmann, supra.* See *State v. Tucker, supra.* Voluntariness of consent to search is a question of fact to be determined from all the circumstances. *State v. Tucker, supra.*

The record in this case indicates that Bliemeister asked Clinton, in a conversational tone, if Bliemeister could search Clinton's person. In response to this question, Clinton replied, "[G]o ahead." There is no evidence in the record of anything resembling duress or coercion, whether express, implied, physical, or psychological. Clinton testified that he was never threatened in any manner and was not promised anything.

We agree with the juvenile court's implicit conclusion that under the totality of the circumstances, Clinton's consent to search his person was voluntary. Nothing in the record indicates to the contrary. Further, Bliemeister was not required to inform Clinton that he had a right to refuse the request to search. See *State v. Dallmann, supra.* Clinton's assertions to the contrary are without merit.

## V. CONCLUSION

We find that there was no illegal seizure. We further find that Clinton gave voluntary consent to the search of his person. Accordingly, the adjudication order of the juvenile court is affirmed.

AFFIRMED.